UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Maria Rosenthal,
          Plaintiff,

v.                                    Civil Action No.04-10803-MEL

Stephen Glickman,
          Defendant.

PLAINTIFF'S MOTION OF GOOD CAUSE

Now comes the Plaintiff/Defendant a retired citizen pro se, a child of Holocaust whose English is not her native language and without legal skills very grateful that Memorandum and Order dated April 28,2004 allow to mention of the sole defendant not given in the filed Complaint and gave an opportunity to present good cause.

A. Defendant/Plaintiff through his attorney filed a Complaint unexpectable to the Plaintiff/Defendant "for unpaid common area charges, assesments, late fees, fines, attorneys fees and expenses, and interest thereon in the total amount of $ 1,223.32" without break down, and intentionally to Norfolk Superior Court when suppose to be filed in Small Court.

B. Norfolk Superior Court accept for the filing fees of $185.00, and transferd to Brookline District Court again instead to Small Court.

C. Brookline District Court ignored the plaintiff/Defendant's evidence as checks that there are not any dues, but anyway have been entered a Judgment (Rule 58) in:
   1) damages of $ 833.31 was include "condo fees charges of $ 192.82 and $ 445.00 late fees" HOWEVER THE total is $ 637.82 instead of $ 833.31 or farfetched on $195.49 more.

a) The condo fees by itself in the amount of $192.82 is 15.76% of the total amount of seven (7) accounts in the Complaint filed in Norfolk Superior Court of $1,223.32. Besides, on the filed date the condo feeswas charged of $182.82 which also forfetched on only $10.00 plus to the above error of $195.49 or in total more on $205.49.

b) Now about late fees of $445.00 is 36.37% FROM THE $1,223.32 amount of seven accounts and 68.12% FROM the damages in $833.31 Moreover, according to the Rules and Regulations Winchester House Condominium:  " <u>11. Late Charges</u> ARE after 15 days due is one and one-half percent(1.5% ) PER months.  The Court determined that period due only was twenty-one months. If late fees are 1,5% PER MONTHS even from $192.82 would be $2.89 per months multiply on 20.5(21-0,15) MONTHS the late fees would be equal $59.24 in total or farfetched on $385..75 only and over above of $205.49 or in total on $591.24 or on 70.95% FROM DAMAGES IN THE Judgment (Rule 58), Of course from $182.82  thelate fees woukd be  on $3.03 less In total the damages in Judgment (Rule 58) came out to $242.07

2) amount of $67.00 in the judgment is the prejudgment interest maybe is the third from seven accounts which named "fines".

3) and costs in the amount of $110.00 was the fourth from seven accounts and an apart of the next accounts named "expenses" WHICH WOULD COME OUT  TO $419.07(182.82+59.25+67.00+110.00).

4) plus the attorney's fee which would be the other fourth from the seven accounts.  At worst the attorney fees may shown be in the amount of $804.25 but in the Judgment is $2,921.31 which farfetched on $2117.06 at worst.

5) The entered Judgment (Rule 58) the sum was not added as, (831.31+67.00+110.00+2921.31) "finding of fact" in the amount of $3,931.62 which higher on 321.4% or more thanthree (3) times then amount demand by the defendant/plaintiff in his filed Complaint in Norfolk Superior Court and transfered to Brookline District Court in the amount of $1,223.32. As shown above the Court have not Modified the Judgment (RULE 58) from $3,931.62 to $1,609.07 which even this amount higher on $385.75 eventhough the court had not "find facts" that plaintiff/defendant was indebted to plaintiff/defendant for unpaid assessments and interest included in the amount of $1223.62, when assessment amount is always is very high.

These all is a derision not only on the elderly citizen but also a violation of the M.G.L. Chapter19A mandated to protect abuse elderly, a persecution of guman being dignity, and also shows the disparate treatment toward ethnic minority as Commission's Final Report of study racial and ethnic bias in the Commonwealth exists.

D. That all above gave power and certainty to achieve step by step even more, known that the rule 58 means a party shall recover only a sum the defendant/plaintiff through attorney start malicious intent to enforce lien through the Mortgage Company But the defendant's attorney was receive unexpectable respond that "your client has no priority at all over our mortgage lien"

E. But defendant/plaintiff through his attorney's power and certainty found a way, even on Judgment (Rule 58) and without Court's decision that:

1) a lien exists pursuant to the provision of M.G.L., C.183A, Section 6;

2) the "real estate" could be sold pursuant the requirement of M.G.L., c.254, Section 5 and 5A in order to satisfy the lien established, arranged that "at the office of the offic of the Norfolk County Deputy Sheriff scheduled Public Auuti on for the purpose of satisfying such lien the real estate will be sold on the day of the Highest Jewish Holy Days YOM KIPPUR.
This is a forgery because the Judgment (Rule 58) HAS NOT ESTABLISH A LIEN, but the Court has nottook any action defendant/plaintiff and his attorney.

F. The same, when an elderly citizen without legal skills after an extension asked to enlarge time during the Highest Jewish Holy Days, Rosh Ha-Shanah and Yom Kippur the APPEALS COURT DENIED THE ENLARGMENT ON RELIGIOUS ALLOWANCE to a child of Holocaust a strict observanęe, and in mean time accused the elderly citizen that she " failed to file her brief" AND "subsequently dissmissed the appeal".
The Supreme Judicial Court of Massachusetts share the same opinion in a case where there are forgery, theeatment, disparate treatment toward ethnic minority and religious discrimination.

Wherefore, the Plaintiff/Defendant continue believe in law and in the thruth, despite on her suffer these all years spiritual physical and financial, asks this United State District Court of Massachusetts the cradle of democracy to serve justice by return her Religious Rights, forceable taken $7,119.00,

outlaw the disparate treatment toward her, relief her from the J Judgment (Rule 58) AND TO AWARD PUNITIVE DAMAGES WITH INTEREST and costs that the elderly citizen protected by M.G.L. Chapter 19A COULD ENJOY THE PEACE AND FREEDOM IN THE Commonwealth.

Dated: May 19, 2004

Respectfully submitted,

*Maria Rosenthal*

Maria Rosenthal
P.O. Box 1953
Brookline, MA  02446

# Commonwealth of Massachusetts
## District Courts of Massachusetts
### BROOKLINE DIVISION

Exhibit E1

NORFOLK, ss

Glickman, Trustee of
ster House Condominium Trust,
        Plaintiff

Civil Action No. 9209RM0045

Rosenthal,
        Defendant

## JUDGMENT
(Rule 58)

Upon _____ Findings of the Court _____

It has been ORDERED and ADJUDGED by the court, __Peter W. Agnes, Jr.__ (name of judge)
(it is recorded by the clerk without court order,)

☒ that the plaintiff, __Stephen Glickman, Trustee of Winchester~~ House Condominium Trust~~__, recover of the defend __Maria Rosenthal__ the sum of $ __833.31__, with interest from _____ (date) as provided by law in the amount of $ __67.00__, (and costs in the amount of $ __110.00__ plus Attorney Fees in the amount of $2,921.31.

☐ that the plaintiff, _____, take nothing, that the action be dis as to defendant, _____, (on the merits,) (and that the defendant, _____

_____, recover costs in the amount of $_____).

_(signature)_ (Assistant) Clerk

July 1, 1993
(date)

Judgment entered on docket on __July 1, 1993__ (date) pursuant to Rules 58(a) and 79(a) and copy thereof sent to parties immediately, as notice pursuant to Rule 77(d).

(signature)

Attached to the copy of this judgment sent as notice are the court's rulings of law (and findings of fact), if any.

This form prescribed by the Chief Justice of the District Courts

04 - Form W529

Exhibit G6

## RULES AND REGULATIONS

## WINCHESTER HOUSE CONDOMINIUM

In these rules and regulations the word "Condominium" shall refer to Winchester House Condominium and the words "common areas and facilities", "Trustees", "Unit" and "Unit Owners" shall have the meaning given to these terms in the Master Deed creating Condominium.

1. <u>No obstruction of common areas.</u>  Unit Owners shall not cause, nor shall they suffer obstruction of common areas and facilities except for storage in any assigned storage areas or except as the Trustees may in specific instances expressly permit.

2. <u>Effect on Insurance</u>.  No Unit Owner shall use his Unit in such fashion as to result in the cancellation of insurance maintained by the Trustees on the Condominium or in any increase in the cost of such insurance, except that uses resulting in increase in premiums may be made by specific arrangement with the Trustees providing for the payment of such increased insurance costs by the Unit Owner concerned.

3. <u>Nameplates</u>.  Unit Owners may place their names only in such places outside the Unit as may be provided for by the Trustees.

4. <u>Pets</u>.  The Trustees may insist upon any Unit Owner not keeping a pet which the Trustees, in their sole judgment, determine interferes with the rights of other Unit Owners.

5. <u>Radios, Phonographs, Musical Instruments</u>.  The volume of television sets, radios, phonographs, musical instruments and the like shall be turned down after 11 p.m. and shall, at all times, be kept at a sound level which will not annoy the occupants of neighboring Units.

6. <u>Laundry</u>.  No Unit Owner shall hang laundry, rugs, drapes and the like out of a Unit.

7. <u>Transient Rental and Signs</u>.  Unit Owners may not rent any Unit for transient purposes (less than 3 months) nor may they display "For Sale" or "For Rent" signs in windows of their Unit nor may the Owners of residential units place window displays or advertising in windows of such Units.

8. <u>Abuse of mechanical system</u>.  The Trustees may charge to a Unit Owner any damage to the mechanical, electrical or other building service system of the Condominium caused by such Unit Owner by misuse of those systems.

9. <u>No offensive activity</u>. No noxious or offensive activity shall be carried on in any Unit, or in the common areas and facilities, nor shall anything be done therein, either willfully or negligently, which may be or become an annoyance or nuisance to the other Unit Owners or occupants. No Unit Owner shall make or permit any disturbing noises by himself, his family, servants, employees, agents, visitors and licensees, nor do or permit anything by such persons that will interfere with the rights, comforts or convenience or other Unit Owners.

10. <u>Patios and Balconies</u>. Patios and balconies shall be kept in orderly fashion at all times. Objects shall not be placed on or hung from the patio or balcony railings or in any other manner placed such that there would be any reasonable risk of the object falling from the patio or balcony.

11. <u>Late Charges</u>. Pursuant to the powers granted the Trustees in Section 5.4.2 of the Trust, common expenses not received by the Trustees within fifteen (15) days after the due date shall be subject to a late charge of one and one-half percent (1 1/2%) per month, apportioned daily, on the unpaid amount until paid in full.

-26-

Exhibit 19

Boston Mayor Thomas Menino charged for the ugliness.

...usual after Labor Day, but this year, more landlords than ever were charged for the ugliness.

walks may have piled ... s high as...

...weekend in the area. The result: 262 violations were issued within the first three days, compared to just 80 that were issued last year. Each code violation carries a fine of $300.

Menino's effort was intended to...

...ple for their tenants as to the way they move in and out. People in Allston-Brighton have too much pride in their neighborhood to have it treated like a dumping ground."

Throughout last week, four to five code enforcement officers — instead of the usual one officer — worked their ways through Allston-Brighton's neighborhoods in waves. They searched for spots where more than one cubic yard of trash was piled onto a piece of public property, which could be an alley, a sidewalk or a street. The city received 170 complaints from neighbors.

Captain Michael Mackan of the code enforcement police said that of the 80 landlords cited last year, about 20-25 of them have improved their efforts to clean up their property this year. And while his team issued 135 violations on Tuesday, Sept. 2, that number went down to 79 on Wednesday and 48 by Thursday.

Because trash pick-up was delayed by one day due to the holiday, residents in some parts of the city had to wait until Friday for a public collection.

But what can landlords do?

Mackan said that since it's clear that there is a high turnover rate in local apartments in September, and since it's well-known that people who move often throw away large amounts of trash, landlords need to plan ahead.

"It's up to landlords to provide adequate trash storage for the people who live in their buildings," he said. "And at this time of year, there is a need for extra storage to be provided. Landlords are aware of this need."

Mackan said property owners can

*see Trash, page 17*

..affect residents' quality of life.

"Every year we welcome back the students of Boston," said Menino. "But I don't want their return to be a nightmare to the people who live in the neighborhoods. My message is that landlords will be held responsi-

# LEGAL NOTICE

## SALE OF REAL ESTATE
## UNDER M.G.L., c. 183A, Sec. 6.

By virtue of a judgment entered by the Brookline District Court, Norfolk County (Docket No. 9209RM045) in favor of Steven Glickman, Trustee of Winchester House Condominium Trust v. Maria Rosenthal establishing a lien pursuant to G.L. c. 183A, Sec. 6 on the real estate known as Unit No. 305 of Winchester House Condominium and located at 19 Winchester Street, Brookline, Massachusetts, for the purpose of satisfying such lien the real estate will be sold at Public Auction at 11:00 A.M. on October 9, 1997 at the office of the Norfolk County Deputy Sheriff, 630 High Street, Dedham, MA, Massachusetts. The premises to be sold are more particularly described as follows: the Unit ("Unit") known as Unit 305 in the Winchester House Condominium ("Condominium") created by Master Deed ("Master Deed") dated April 23, 1979 and recorded on April 24, 1979 with the Norfolk Registry of Deeds in Book 5593, Page 511. The Unit contains 748 square feet and is laid out as shown on a plan recorded in Norfolk Registry of Deeds Book 5675, Page 477, which is a copy of a portion of the plans filed with the Master Deed and to which is affixed the verified statement in the form provided for in G.L. c. 183A, Section 9. The Unit is conveyed together with a .941 percentage interest (a) in the common areas and facilities of the Condominium, as described in the Master Deed and (b) in the Winchester House Condominium Trust, recorded with said Registry of Deeds in Book 5593, Page 523. The Unit is conveyed together with the exclusive right and easement to use, for purpose of parking a car, Parking Space 21 and shown on the site plan entitled "Site plan Winchester House Condominium, Brookline, Mass." scale 1 inch = 20 feet, dated February 27, 1979, by John F. Hennessey, C.E., recorded with said Registry of Deeds as Plan No. 296 of 1979 in Plan Book 274. The aforesaid exclusive right and easement shall be appurtenant to the unit described above, shall run with the land and shall be conveyed by the Grantee, his successors and assigns, only together with the Unit described above, unless conveyed to the Winchester House Condominium Trust or unless the Condominium Trust otherwise consents in writing thereto. The Unit is to be used only for residential purposes and for no other purpose, except as may be expressly permitted by the Trustees in accordance with the provisions of the Winchester House Condominium Trust. The Grantee acquires the Unit with the benefit of, and subject to the provisions of G.L. c. 183A, relating to condominiums, as that statute is written as of the date hereof, the Master Deed and Condominium Trust referred to above and any by-laws and rules and regulations stated or referred to in the Master Deed as completely as if each were fully set forth herein. Being the same premises conveyed Maria Rosenthal by deed recorded with said Deeds on April 27, 1984 in Book 6385, page 312.

Terms of Sale:
Non-refundable certified check for $2,500.00 to be paid by the successful bidder at the time of the auction.

The balance of the purchase price to be paid within thirty days of the sale. Sheriff's Foreclosure Deed to be issued to purchaser upon payment in full of sale price. deed shall convey the premises subject to, and with the benefit of, any restrictions, ments, improvements, assessments, encumbrances, liens or claims in the nature of s which are, by operation of law, conveyed with the premises.

o representation is or shall be made by Seller as to the status of any mortgage.

ther terms to be announced at the sale.

sale is pursuant to a judgment entered by the Brookline, a copy of which may be ed at the office of Attorney Michael Merrill, One Beacon Street, Boston, MA 02108, 1760, attorney for the Seller, by appointment.

Michael W. Merrill, Attorney for the
Trustees of Winchester House Condominium
Trust

9/25

This is your ticket to the hottest show in town!
SAVE $4.00


