fees, incurred by the Trustees in collection of said assessments for common expenses and enforcement of said lien."
Exhibit 2, Declaration of Trust, Section 5.4.2.

During the twenty-one month period from February, 1989 to and including October, 1990, the monthly assessment for common expenses established by the Trustees for the defendant's unit was $182.82. However, the defendant paid only $177.61 in fifteen of those months, paid only $172.40 in one of those months, paid only $167.19 in one of those months, and paid $94.20 in one of those months, resulting in a shortfall of $192.82 based upon the total amount of the monthly assessment due during that period.

According to the minutes of the meeting of the Trustees of the Winchester House Condominium Trust on July 17, 1988,

> "The Trustees have decided that late charges for monthly condo fees will be charged at the rate of $10.00 for the first late month and $25.00 for each additional month until the principal is paid. Monthly fees are considered overdue if not received by APT by the tenth of the month. Any fees outstanding for three months will be turned over for collection. The late charges will continue to accrue until the principal is paid. No late charges will be assessed on late fees."

Exhibit 3. This determination to impose a late charge is an exercise of the power granted to the Trustees under section 5.4.2 of the Trust Instrument and does not constitute an amendment to the Declaration of trust requiring the approval of the Unit Owners.

The plaintiff published by posting in common areas of the condominium development both the terms of the late fee and the relevant excerpts from the Declaration of Trust authorizing the

5

imposition of that fee in a manner that was sufficient to enable unit owners such as the defendant to become aware of the changes and to inspect all relevant documents.

Based upon the application of this formula for late charges to the defendant's unpaid balance, late fees totaling $445.00 accrued for the unpaid common area assessments.

There was evidence, and I find and rule that the plaintiff is authorized by the Trust's by-laws and by a vote of the Board of Trustees to bring this action on behalf of the Trust.

The defendant Unit Owner submitted documents including copies of cancelled checks and a letter from the post office detailing mail box pick-up and estimated delivery times. An examination of this evidence lends support to the accuracy of the ledger sheet submitted by the plaintiff.

The defendant appears to claim an offset against the unpaid balance due to the plaintiff because of a disagreement over portions of the Condominium Association budget and a claim of inadequate heat over one short period of time. However, it is settled that a condominium Unit Owner may not refuse to pay an otherwise lawful common area assessment by asserting a right of offset. Trustees of the Prince Condominium Trust v. Prosser, 412 Mass. 723, 725-26 (1992)("Whatever grievance a unit owner may have against the condominium trustees must not be permitted to affect the collection of lawfully assessed common area expense charges").

6

I further find that over the course of the past three years the defendant received at least six comprehensive, written statements of the amounts due and unpaid for common area assessments and late fees in this case. I also find that the plaintiff engaged in numerous good faith attempts to settle the case and fairly and promptly answered the many letters submitted by the defendant requesting details about the charges due and payments made.

The court has reviewed the affidavit of attorney's fees and expenses submitted by the plaintiff in which the sum of $2,921.31 is sought. No evidence rebutting these estimates was offered by the defendant. The court finds and rules that the plaintiff's request represents a fair and reasonable estimate of the legal expenses incurred in collecting the common area expenses and late fees and that under the Trust Instrument (exhibit 2) the plaintiff is entitled to recover these costs. See <u>Trustees of Prince Condominium Trust v. Prosser</u>, 412 Mass 723, 727 (1992), citing <u>Leventhal v. Krinsky</u>, 325 Mass. 336, 341 (1950).

The court also finds that despite the fact that the defendant was pro se and the plaintiff was represented by an attorney, the defendant persisted in the prosecution of the defense in this case against overwhelming evidence that she owed the amounts in question for common area fees and late charges on those unpaid fees. As a result of the defendant's persistence, the plaintiff was forced to expend significant sums in seeking to collect the monies due to the Trust. The court further finds

8

Request 17. Denied.

Request 18. Allowed.

### III. CONCLUSION

For the above reasons, judgement shall enter forthwith for the plaintiff on his complaint in the amount of $833.31 along with $2921.31 for attorney's fees and costs and statutory interest.

By the Court,

Peter W. Agnes, Jr.
Justice
June 18, 1993

Exhibit G6

RULES AND REGULATIONS

WINCHESTER HOUSE CONDOMINIUM

In these rules and regulations the word "Condominium" shall refer to Winchester House Condominium and the words "common areas and facilities", "Trustees", "Unit" and "Unit Owners" shall have the meaning given to these terms in the Master Deed creating Condominium.

1. <u>No obstruction of common areas</u>. Unit Owners shall not cause, nor shall they suffer obstruction of common areas and facilities except for storage in any assigned storage areas or except as the Trustees may in specific instances expressly permit.

2. <u>Effect on Insurance</u>. No Unit Owner shall use his Unit in such fashion as to result in the cancellation of insurance maintained by the Trustees on the Condominium or in any increase in the cost of such insurance, except that uses resulting in increase in premiums may be made by specific arrangement with the Trustees providing for the payment of such increased insurance costs by the Unit Owner concerned.

3. <u>Nameplates</u>. Unit Owners may place their names only in such places outside the Unit as may be provided for by the Trustees.

4. <u>Pets</u>. The Trustees may insist upon any Unit Owner not keeping a pet which the Trustees, in their sole judgment, determine interferes with the rights of other Unit Owners.

5. <u>Radios, Phonographs, Musical Instruments</u>. The volume of television sets, radios, phonographs, musical instruments and the like shall be turned down after 11 p.m. and shall, at all times, be kept at a sound level which will not annoy the occupants of neighboring Units.

6. <u>Laundry</u>. No Unit Owner shall hang laundry, rugs, drapes and the like out of a Unit.

7. <u>Transient Rental and Signs</u>. Unit Owners may not rent any Unit for transient purposes (less than 3 months) nor may they display "For Sale" or "For Rent" signs in windows of their Unit nor may the Owners of residential units place window displays or advertising in windows of such Units.

8. <u>Abuse of mechanical system</u>. The Trustees may charge to a Unit Owner any damage to the mechanical, electrical or other building service system of the Condominium caused by such Unit Owner by misuse of those systems.

-25-



9. <u>No offensive activity</u>. No noxious or offensive activity shall be carried on in any Unit, or in the common areas and facilities, nor shall anything be done therein, either willfully or negligently, which may be or become an annoyance or nuisance to the other Unit Owners or occupants. No Unit Owner shall make or permit any disturbing noises by himself, his family, servants, employees, agents, visitors and licensees, nor do or permit anything by such persons that will interfere with the rights, comforts or convenience or other Unit Owners.

10. <u>Patios and Balconies</u>. Patios and balconies shall be kept in orderly fashion at all times. Objects shall not be placed on or hung from the patio or balcony railings or in any other manner placed such that there would be any reasonable risk of the object falling from the patio or balcony.

11. <u>Late Charges</u>. Pursuant to the powers granted the Trustees in Section 5.4.2 of the Trust, common expenses not received by the Trustees within fifteen (15) days after the due date shall be subject to a late charge of one and one-half percent (1 1/2%) per month, apportioned daily, on the unpaid amount until paid in full.

in Properties Team, Inc.

ust 10, 1990



Maria Rosenthal
Winchester Street, Unit #305
ookline, MA  02146

Re:  Winchester House Special Assessment

r Unit Owner:

s is a reminder to all Unit Owners that the Special
essment is payable before/on August 17, 1990.  <u>All monies not
lected by that date are subject to a 1.5% interest charge
thly on the unpaid balance.</u>  Please remember if the Special
essment is not collected by the above date the contractor has
right (as written in the contract) to <u>stop all work</u> until
money has been collected.

hope that all Unit Owners understand the importance of
lecting the assessment promptly.  If you have not mailed in
r check, please do so as soon as possible to avoid the late
rge.

behalf of the Winchester House Board of Trustees, thank you
your anticipated cooperation.

:erely,

RICAN PROPERTIES TEAM, INC.


l Freedman
)erty Manager

SQUARE • 442 MAIN STREET • MALDEN • MASSACHUSETTS • 02148-5105 • 617-397-7900 • FAX 617-397-8379

# Commonwealth of Massachusetts
# District Courts of Massachusetts
## BROOKLINE DIVISION

NORFOLK, ss

Stephen Glickman, Trustee of
Winchester House Condominium Trust,
           Plaintiff

Civil Action No. 9209RM0045

vs

Maria Rosenthal,
           Defendant

### JUDGMENT
(Rule 58)

Upon _____ Findings of the Court _____

(it has been ORDERED and ADJUDGED by the court, __Peter W. Agnes, Jr.__,)
(it is recorded by the clerk without court order,)  (name of judge)

☒ that the plaintiff, __Stephen Glickman, Trustee of Winchester~~ House Condominium Trust~~__, recover of the defendant, __Maria Rosenthal__ the sum of $ __833.31 – 60~~__, with interest from _____ (date)
as provided by law in the amount of $ __67.00__, (and costs in the amount of $ __110.00__).
plus Attorney Fees ~~in the amount~~ of $2,921.31. [handwritten annotations]

☐ that the plaintiff, _____, take nothing, that the action be dismissed
as to defendant, _____, (on the merits,) (and that the defendant, _____
_____, recover costs in the amount of $ _____).

_[signature]_
(Assistant) Clerk

July 1, 1993
(date)

Judgment entered on docket on __July 1, 1993__ pursuant to Rules 58(a) and 79(a) and
(date)
a copy thereof sent to parties immediately, as notice pursuant to Rule 77(d).

_____
(signature)

Attached to the copy of this judgment
sent as notice are the court's rulings of
law (and findings of fact), if any.

This form prescribed by the Chief Justice of the District Courts

DCM-34 — Form W529

Glen W. Snyder, Counsel

William J. Tierney, Associate Counsel

Kenneth T. Ulrich,

Jonathan P. Andrews,

Maria Corpora-Buck,

Legal Department

Exhibit "C"

Exhibit ""

# GMAC
Mortgage

April 21, 1994

David E. Isenberg
Paralegal
Merrill & McGeary
Suite 1120
One Beacon Street
Boston, MA  02108

Re:  Maria Rosenthal
     Winchester House Condominium
     19 Winchester Street, United 305
     GMACM Account No. 30-112854-1

Dear Mr. Isenberg:

Your letter of March 24, 1994 addressed to Pam Klein in our Waterloo office has been referred to this department for response.

It is our position that, because your client's Complaint was filed and served in 1992 (prior to the effective date of the Massachusetts "SUPERLIEN" law), your client has no priority at all over our mortgage lien.

Let me also remind you that under the 1993 law, a lender is only liable for (a) six months common expenses, and (b) legal fees and costs incurred in the action to enforce the lien, provided that it has been properly perfected.  Late fees, special assessments, superfluous legal fees, and common expenses in excess of six months have no special priority.

Your client may execute on its judgment, but the execution sale will be under and subject to our mortgage.

Sincerely,

Kenneth T. Ulrich
KTU/kg

cc:  P. Klein
     Robert J. Galvin, Esq.

walks may have piled as high as usual after Labor Day, but this year, more landlords than ever were charged for the ugliness.

Boston Mayor Thomas Menino last week ordered additional code weekend in the area. The result: 262 violations were issued within the first three days, compared to just 80 that were issued last year. Each code violation carries a fine of $300.

Menino's effort was intended to affect residents' quality of life.

"Every year we welcome back the students of Boston," said Menino. "But I don't want their return to be a nightmare to the people who live in the neighborhoods. My message is that landlords will be held responsible for their tenants as to the way they move in and out. People in Allston-Brighton have too much pride in their neighborhood to have it treated like a dumping ground."

Throughout last week, four to five code enforcement officers — instead of the usual one officer — worked their ways through Allston-Brighton's neighborhoods in waves. They searched for spots where more than one cubic yard of trash was piled onto a piece of public property, which could be an alley, a sidewalk or a street. The city received 170 complaints from neighbors.

Captain Michael Mackan of the code enforcement police said that of the 80 landlords cited last year, about 20-25 of them have improved their efforts to clean up their property this year. And while his team issued 135 violations on Tuesday, Sept. 2, that number went down to 79 on Wednesday and 48 by Thursday. Because trash pick-up was delayed by one day due to the holiday, residents in some parts of the city had to wait until Friday for a public collection.

But what can landlords do?

Mackan said that since it's clear that there is a high turnover rate in local apartments in September, and since it's well-known that people who move often throw away large amounts of trash, landlords need to plan ahead.

"It's up to landlords to provide adequate trash storage for the people who live in their buildings," he said. "And at this time of year, there is a need for extra storage to be provided. Landlords are aware of this need."

Mackan said property owners can

see Trash, page 17

Exhibit I

---

## LEGAL NOTICE

### SALE OF REAL ESTATE
### UNDER M.G.L., c. 183A, Sec. 6

By virtue of a Judgment entered by the Brookline District Court, Norfolk County (Docket No. 9209RM0045) in favor of Steven Glickman, Trustee of Winchester House Condominium Trust v. Maria Rosenthal establishing a lien pursuant to G.L. c. 183A, Sec. 6 on the real estate known as Unit No. 305 of Winchester House Condominium and located at 19 Winchester Street, Brookline, Massachusetts, for the purpose of satisfying such lien the real estate will be sold at Public Auction at 11:00 A.M. on October 9, 1997 at the office of the Norfolk County Deputy Sheriff, 630 High Street, Dedham, MA, Massachusetts. The premises to be sold are more particularly described as follows: the Unit ("Unit") known as Unit 305 in the Winchester House Condominium ("Condominium") created by Master Deed ("Master Deed") dated April 23, 1979 and recorded on April 24, 1979 with the Norfolk Registry of Deeds in Book 5593, Page 511. The Unit contains 748 square feet and is laid out as shown on a plan recorded in Norfolk Registry of Deeds Book 5675, Page 477, which is a copy of a portion of the plans filed with the Master Deed and to which is affixed the verified statement in the form provided for in G.L. c. 183A, Section 9. The Unit is conveyed together with a .941 percentage interest (a) in the common areas and facilities of the Condominium, as described in the Master Deed and (b) in the Winchester House Condominium Trust, recorded with said Registry of Deeds in Book 5593, Page 523. The Unit is conveyed together with the exclusive right and easement to use, for purpose of parking a car, Parking Space 21 and shown on the site plan entitled "Site plan Winchester House Condominium, Brookline, Mass." scale 1 inch = 20 feet, dated February 27, 1979, by John F. Hennessey, C.E., recorded with said Registry of Deeds as Plan No. 296 of 1979 in Plan Book 274. The aforesaid exclusive right and easement shall be appurtenant to the unit described above, shall run with the land and shall be conveyed by the Grantee, his successors and assigns, only together with the Unit described above, unless conveyed to the Winchester House Condominium Trust or unless the Condominium Trust otherwise consents in writing thereto. The Unit is to be used only for residential purposes and for no other purpose, except as may be expressly permitted by the Trustees in accordance with the provisions of the Winchester House Condominium Trust. The Grantee acquires the Unit with the benefit of, and subject to the provisions of G.L. c. 183A, relating to condominiums, as that statute is written as of the date hereof, the Master Deed and Condominium Trust referred to above and any by-laws and rules and regulations stated or referred to in the Master Deed as completely as if each were fully set forth herein. Being the same premises conveyed Maria Rosenthal by deed recorded with said Deeds on April 27, 1984 in Book 6385, page 312.

ms of Sale:

Non-refundable certified check for $2,500.00 to be paid by the successful bidder at the e of the auction.

he balance of the purchase price to be paid within thirty days of the sale.

Sheriff's Foreclosure Deed to be issued to purchaser upon payment in full of sale price. deed shall convey the premises subject to, and with the benefit of, any restrictions, ements, improvements, assessments, encumbrances, liens or claims in the nature of which are, by operation of law, conveyed with the premises.

o representation is or shall be made by Seller as to the status of any mortgage. her terms to be announced at the sale.

sale is pursuant to a Judgment entered by the Brookline, a copy of which may be ed at the office of Attorney Michael Merrill, One Beacon Street, Boston, MA 02108, 1760, attorney for the Seller, by appointment.

Michael W. Merrill, Attorney for the Trustees of Winchester House Condominium Trust

18, 25

---

**This is your ticket to the hottest show in town!**
**SAVE $4.00**



# MERRILL & McGEARY
### ATTORNEYS AT LAW
SUITE 1120
ONE BEACON STREET
BOSTON, MASSACHUSETTS 02108

MICHAEL W. MERRILL*
RITA M. McGEARY
*Also Member of Florida Bar

(617) 523-1760
FAX (617) 523-4893
Voice Mail (617) 446-7370

Of Counsel
PAUL J. McCARTHY

October 3, 1997

Stephen B. Goldenberg, Esquire
Goldenberg, Walters & Lipson
7 Harvard Street
Brookline, MA 02146

Re: Winchester House Condominium
    19 Winchester Street
    Brookline, Massachusetts

Dear Steve:

Thank you for your letter dated October 1, 1997. Enclosed is a ledger sheet indicating the amount due as of this date. Since that time additional costs have been incurred for advertising, sheriff's fees and legal fees. These costs are approximately $2,000.00. Therefore, the total due is $7,119.00.

The foreclosure sale is scheduled for October 9, 1997. Ms. Rosenthal has no mortgage on the unit. The Trustees intend to bid at the foreclosure sale the total amount owed the Trust. The unit will then be sold to the highest bidder.

Payment in full now is the only way the matter can be resolved once and for all. Please request Ms. Rosenthal to have the check delivered to my office as soon as possible. This will avoid additional legal fees and costs.

Very truly yours,

Michael W. Merrill

MWM/dml
Enclosure

**Post-it® Fax Note** 7671 Date 10/9/97 pages ▶ 2
To: M. ke Merrill | From: Steve Goldenberg
Co./Dept. | Co.
Phone #: 523-1760 | Phone #: 566-2300
Fax #: 523-4893 | Fax #: 566-9350

# Goldenberg Walters & Lipson
### A Professional Association of Attorneys

ROGER R. LIPSON
LORI B. POPKEWITZ

RITA B. BOLLAK
OF COUNSEL

*ALSO ADMITTED IN FLORIDA

SEVEN HARVARD STREET
BROOKLINE, MASSACHUSETTS 02146
(617) 566-2300
TELEFAX (617) 566-9350

October 8, 1997

Michael W. Merrill, Esq.
Merrill & McGeary
One Beacon Street
Boston, MA 02108

RE: Maria Rosenthal, 19 Winchester Street, Unit 305-1

Dear Michael:

In accordance with our conversation of earlier today, Maria Rosenthal by countersigning this letter agrees that she will pay to the Winchester House Condominium Trust the total sum of $7,119.00. She hereby agrees to pay this sum to the Condominium Trust in or within one (1) year from the date hereof. As evidence of her willingness to make these payments we enclose herewith our office check payable to you as Attorney for the Condominium Trust in the sum of $4,079.19. Upon your acceptance of this payment the balance due to the Condominium will be reduced to $3,039.81.

This check and this agreement is being made in consideration of the Trustees not proceeding at this time with the scheduled condominium lien foreclosure sale now set for Thursday October 9, 1997. It is further understood and agreed that if Ms. Rosenthal should fail for any reason to pay the aforesaid sum in a timely manner, we recognize that the Trustees are able to recommence the foreclosure sale by publication without seeking further Court permission.

Please signify the Trustees acceptance of these terms by signing a copy of this letter and returning the same to me.

Thank you.

Very truly yours,

Stephen B. Goldenberg

Agreed to and accepted:

Maria Rosenthal
Maria Rosenthal



**REF. NO.: 10270043140997**   **AMOUNT:   $4,079.19**

Exhibit E

# FAX Transmission

**MERRILL & McGEARY**
ONE BEACON STREET, SUITE 1120
BOSTON, MA 02108
TEL: (617) 523-1760   FAX: (617) 523-4893

Date: 10/9/97

Number of Pages Sent 1 (Including this one)

Transmitted by: _____  For: _____

To: Carol Murphy     292-1661
    Name              Fax Number

To: Mr. Rosenthal
    Name              Fax Number

Comments:

Carol

Enclosed is the letter from Steve Goldenberg and the copy of the check. I will go back to Steve and negotiate a payment schedule and a firm agreement — but the foreclosure is off for now.   Mike.

This telecopy is attorney-client privileged and contains confidential information intended only for the person(s) named above. Any other distribution, copying or disclosure is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone and return the original transmission to us by mail without making a copy. If you have questions regarding the transmission, please call the transmitter listed above.

Commonwealth of Massachusetts

Norfolk                                        Superior Court

                                      11:46"  Docket No ____
                                      10/9/97 T.R.O. to
Maria Rosenthal, Plaintiff            issue to restrain the
                                      sale. this T.R.O. is to
                                      issue based in reliance
                                      on the October 8th letter
Jim Flood                             from atty. Goldenberg to
in his capacity as                    atty. Merrill said letter
Norfolk Deputy Sheriff                purporting to delay the
                                      foreclosure at 11 a.m. for
            Defendant (Butler, J.) atty. ____
                                              ass't clerk

## Ex Parte Motion to Restrain the Sale

Now, comes Maria Rosenthal and asks the Court to stop the Deputy Sheriff from go ahead with the sale at 11:00 a.m October 9, 1997 during the Jewish High Holy Days because at 10:00 a.m according to the Sheriff's office no facsimile was received

                          Maria Rosenthal
                          14 Winchester St #3C
                          Brookline, MA 021__

October 9, 1997

ENDORSE CHECK HERE
X. Pay to the order of
The N[...], Inc. [illegible]
Michael Merrill

CREDIT TO THE ACCOUNT OF WITHIN NAMED PAYEE ABSENCE OF ENDORSEMENT GUARANTEED CASHIER'S [illegible] BANK

DO NOT WRITE / STAMP BELOW THIS LINE
BANK ENDORSEMENT

**OFFICIAL CHECK**

PAY
TO THE ORDER OF
$ **55 5000**

Date

Issued by Integrated Payment Systems Inc., Englewood, Colorado
KeyBank National Association, Denver, Colorado

11305

Drawer: Fleet National Bank
SIGNATURE

[STE]PHEN B. GOLDENBERG
[J]ACOB WALTERS
[jer] R. LIPSON
[. R.] POPKEWITZ

S. POLLAK
COUNSEL

ADMITTED IN FLORIDA

**Ginsberg  
Walters  
& Lipson**

A Professional Association of Attorneys

SEVEN HARVARD STREET  
BROOKLINE, MASSACHUSETTS 02146  
(617) 566-2300  
TELEFAX (617) 566-9350

November 21, 1997

[Mic]hael Merrill, Esquire  
[Mer]rill & McGeary  
[__] Beacon Street  
[Bost]on, MA 02108

**19 Winchester Street Condominium/Maria Rosenthal**

Michael:

In connection with the judgment and execution obtained by the Trustees of the [Winch]ester House Condominium and the demand for $7,119.00 on which Ms. Rosenthal has [made] a partial payment of $4,079.19, I am pleased to enclose herewith a bank check for the [balanc]e of $3,039.81 payable to you as attorney for Winchester House Condominium.

This brings the total amount paid to the amount demanded by the Trustees under the [judgme]nt and accordingly, I would expect that the judgment would be returned to the Brookline [District] Court marked "satisfied in full".

[H]owever, you should note, and we would hope that the Trustees would note, that there [is a discr]epancy in the amount that the Court awarded in this matter and that accordingly, you [on behal]f of the Trustees have collected. The discrepancy relates to an affidavit that you [submitte]d to the Court and that is referenced in Judge Agnes' decision of June 18, 1993. He [reference]s your affidavit of fees and expenses noting that the total being sought is $2,921.31. [The affid]avit indicates that that, in fact, is the amount due the plaintiff, i.e. the Trustees, plus [attor]ney's fees and expenses in total.

[Th]us, the total that was being sought at that time was $2,921.31. In fact, however, [in th]at affidavit and the Judge's findings and the judgment the amount of $2,921.31 [wou]ld have been the total, got listed as attorney's fees alone. It would appear, [t]hat Ms. Rosenthal has paid $833.31 plus costs (I assume the $67.00 of interest [on the] judgment would still be payable) for a total of $943.31 overpaid by Ms. Rosenthal.

:ael Merrill, Esq.
ember 21, 1997
e 2

If you would review that affidavit and the judgment and concur with this conclusion, I d request that you present those findings to the Trustees and hopefully encourage them fund this amount of money to Ms. Rosenthal in order to complete this matter once and for

erely,


hen B. Goldenberg

sure

mk

Exhibit A

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

99-P-15

STEPHEN GLICKMAN, trustee,[1]

vs.

MARIA ROSENTHAL.

## MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

In 1997 the defendant filed a "Motion for Clarification" of a judgment entered against her in 1993. Denying the motion, the lower court judge ruled that it was untimely if considered under Mass.R.Civ.P. 59, 365 Mass. 827 (1974), and "not filed within a reasonable time" if considered under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). Her motion for reconsideration was also denied. The Appellate Division affirmed both rulings, and the defendant has appealed.

Upon review, we are of opinion that the motion for clarification sought, among other things, to call the court's attention to a clerical error in the 1993 judgment; to that extent, it should have been reviewed under Mass.R.Civ.P. 60(a), 365 Mass. 829 (1974), which authorizes the correction of clerical mistakes "at any time."

---

[1] Of Winchester House Condominium Trust.

#9